**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

REUBEN AVENT,

         Plaintiff,      1:19-cv-1494 (BKS/DJS)

v.

PLATINUM PLUS AUTO PROTECTION, et al.,

         Defendants.

**Appearances:**

*Plaintiff, pro se:*
Reuben Avent
New York, New York

*For Defendants Palmer Administrative Services, Inc. and PayLink Direct:*
Eric Weinstein
Ellenoff Grossman & Schole LLP
1345 Avenue of the Americas
New York, NY 10105

*For Defendant Platinum Plus Auto Protection*
Haley H. Jung
Jeffrey H. Kass
Lewis Brisbois Bisgaard & Smith LLP
77 Water Street, Suite 2100
New York, NY 10005

*For Defendant Atlantic Specialty Insurance Company*
Helen E. Tuttle
Erin L. Hoffman
Faegre Drinker Biddle & Reath LLP
1177 Avenue of the Americas
41st Floor
New York, NY 10036

**Hon. Brenda K. Sannes, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.    INTRODUCTION

Plaintiff *pro se* Reuben Avent brings this action asserting a claim of racial discrimination under 42 U.S.C. § 1981 and a claim under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., as well as state law claims for fraud in the inducement and breach of contract, arising out of warranty protection insurance for his vehicle. He has named as defendants Platinum Plus Auto Protection ("Platinum Plus"), Atlantic Specialty Insurance Company ("Atlantic"), Palmer Administrative Services, Inc. ("Palmer"), PayLink Direct (collectively, the "Company Defendants"), and Christina Strain.[1] Presently before the Court are the Company Defendants' motions to dismiss under Rule 12(b)(6), (Dkt. Nos. 19, 21, 31), which Plaintiff opposes, and Plaintiff's cross-motion for default judgment, (Dkt. No. 42), which the Company Defendants oppose. (Dkt. Nos. 44, 45, 47). For the reasons that follow, the Company Defendants' motions to dismiss are granted in part and Plaintiff's motion for default judgment is denied.

---

[1] This is the second action Plaintiff has brought arising out of this vehicle service plan. On July 11, 2019, Plaintiff filed a complaint against Platinum Plus, Strain, and PayLink Direct in this Court alleging violations of 42 U.S.C. §§ 1983, 1981, and 1988. (Case No. 19-cv-0831). The Court dismissed the complaint on September 16, 2019, without prejudice as to the claims under §§ 1983 and 1981 because Plaintiff failed to allege that the defendants were state actors, as required under § 1983, and because Plaintiff failed to allege that he was a member of a racial minority or that any defendant discriminated against him based on race, as required by § 1981. *Avent v. Platinum Plus Auto Prot.*, No. 19-cv-0831, 2019 WL 4415527, 2019 U.S. Dist. LEXIS 157238 (N.D.N.Y. Sept. 16, 2019). Approximately one month later, on October 21, 2019, Plaintiff filed this action in the Southern District of New York. (Dkt. No. 2). Because venue was not proper in the Southern District of New York and Plaintiff's claims arose in this district when he was living in Duanesburg, New York, the case was transferred to the Northern District of New York. (Dkt. No. 4). On April 6, 2020, the Court dismissed Plaintiff's claims under § 1983 because the complaint failed to allege that the Defendants were state actors. *Avent v. Platinum Plus Auto Prot.*, No. 19-cv-1494, 2020 WL 1689803, 2020 U.S. Dist. LEXIS 60516 (Apr. 6, 2020).

2

II.    FACTS[2]

On March 20, 2019, Plaintiff, who is African American, purchased a Mercedes Benz. (Dkt. No. 2, ¶¶ 2, 8). Shortly after, on April 10, 2019, Plaintiff was contacted by Defendant Christina Strain, a sales agent of Defendant Platinum Plus, with an offer of "insurance warranty protection" for the vehicle. (*Id.* ¶ 8). Strain represented the policy as offering an "unconditional insurance guarantee over the vehicle's engine and all related mechanics of the vehicle" and providing immediate "tow[ing] and roadside assistance, as well as hotel service without dispute." (*Id.* ¶ 10). Plaintiff paid a $395.00 down payment towards a five-year service contract which cost $4,579.00. (*Id.* ¶ 9). Defendant PayLink Direct was to loan Plaintiff the money, to be paid back in monthly payments over the course of a year. (*Id.*). Plaintiff alleges that Defendant Atlantic "would supervise" all of the Defendants "and have the last decision in all cases involving the contract and the power to compel any provision said therein over the defendants." (*Id.*).

On April 30, 2019, Plaintiff received "a written contract," consisting of a Vehicle Service Agreement ("VSA") issued by Palmer and a Payment Plan Agreement with PayLink Direct. (*Id.* ¶ 11, pp. 15-26; Dkt. Nos. 19-2, 19-3).[3] Performance under the VSA was "guaranteed through a policy of insurance issued by Atlantic." (Dkt. No. 19-2, at 7). Platinum Plus was listed as the seller of the VSA. (*Id.*, at 2).

The VSA states that "coverage is not subject to any verbal representation made by the seller." (Dkt. No. 19-2, at 4). Contrary to Strain's representations, under the VSA Plaintiff would

---

[2] The facts set forth below are drawn from the complaint, its exhibits, and documents integral to the complaint. The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

[3] Plaintiff attached these agreements as an exhibit to the complaint. Because some of the pages of the Vehicle Service Agreement that Plaintiff submitted are cut off on the edges and because the Payment Plan agreement appears to be missing one page, the Court has cited to the complete legible agreements filed by Defendant Palmer. (Dkt. Nos. 19-2, 19-3). Plaintiff has not challenged the authenticity of these documents, which the Court may consider because they were attached to and integral to the complaint. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016).

have to "pay for everything himself, including tow and roadside assistance and apply for a refund later" and the coverage was "extremely limited." (Dkt. No. 2, ¶¶ 13-14). The VSA had a $100 deductible. (Dkt. No. 19-2, at 6). Plaintiff realized that the policy was "third party endorsed," and he may have to apply for reimbursement "with several other companies" for any authorized repairs Plaintiff paid out of pocket. (Dkt. No. 2, ¶ 13).[4] Although Strain represented that "he would receive immediate protection," upon receipt of the VSA Plaintiff recognized that the coverage did not begin until 30 days after he entered into the VSA. (*Id*. ¶¶ 14, 16; Dkt. No. 19-2 at 2) (reflecting a purchase date of April 25, 2019, and a waiting period of 30 days and 1,000 miles before coverage begins). Under the terms of the VSA, the policy could be cancelled by sending a written request with a certified odometer reading to Palmer at the address provided in the document. (*Id*. at 16). The New York "Special State Requirements/Disclosures" provision attached to the VSA states, in relevant part:

> If no claim has been made under this Agreement, You may return this Agreement within twenty (20) days of the date the Agreement was mailed to You, or within ten (10) days of delivery if the Agreement was delivered to You at the time of sale, whichever is less. In such a case, this Agreement will be null and void and We will refund You the full amount of the purchase price of this Agreement.

(*Id.* at 19) (emphasis omitted).

The Payment Plan Agreement provided that Plaintiff was to pay PayLink Direct a total of $4,184 (the total cash price of the VSA less the $395 down payment) in twelve monthly amounts of $348.67 beginning on May 25, 2019. (Dkt. No. 19-3). "Per" the phone call with Defendant Strain, the monthly payments were to be charged to Plaintiff's credit card. (*Id*. at 3). The

---

[4] The VSA provides that "[i]n the event the **Obligor** fails to pay an authorized claim within sixty (60) days after proof of loss has been filed, **You** may filed a direct claim with Atlantic Specialty Insurance Company." (Dkt. No. 19-2, at 7).

Payment Plan Agreement reaffirmed Plaintiff's "right to cancel the Vehicle Service Contract at any time in accordance with the terms of the Vehicle Service Contract." (*Id.* at 4).

On May 1, 2019, Plaintiff called Platinum Plus to ask for a full refund of his security deposit, but only reached an answering machine. (Dkt. No. 2, ¶ 16). For months, Plaintiff called Platinum Plus, but was never able to reach a Platinum Plus employee or get anyone to return his messages. (*Id.*). Plaintiff also called PayLink Direct, Palmer, and Atlantic to reject the terms of the VSA, request a full refund of his security deposit, and inform them that he could not reach Platinum Plus. (*Id.* ¶ 17). All three companies "refused to assist plaintiff" and "claimed that the contract was final and binding and solely up to the agent to alter and out of their control." (*Id.*).

PayLink Direct informed Plaintiff that "the terms were final" and Plaintiff "had incurred a $4,000 dollar debt" based on his phone called with Strain. (*Id.* ¶ 18). PayLink Direct then "instituted collections on that debt," and began "harass[ing] and intimidate[ing]" Plaintiff through phone calls. (*Id.*). PayLink Direct's attempt to collect the outstanding balance "damaged [Plaintiff's] credit rating and destroyed his chances of securing a loan on a home." (*Id.*). Plaintiff was also threatened and harassed through phone calls from PayLink Direct's employees for "his refusal to accept and pay the debt." (*Id.*). The Defendants acted together to "get Plaintiff to falsely admit the debt" that he owed PayLink Direct, (*id.*), and "[p]honecalls were made by each defendant from April, 2019 to and through September, 2019, to force plaintiff to concede and pay [his] unlawful false debt." (*Id.* ¶ 34).

Plaintiff filed a complaint with the Better Business Bureau in an attempt to get Defendants to return Plaintiff's down payment, which Defendants still refused to do. (*Id.* ¶ 19).[5]

---

[5] In their motion, Defendants Palmer and PayLink Direct claim that Palmer issued a full refund of Plaintiff's down payment to his credit card. (Dkt. No. 19-4, at 19). Although Plaintiff seemingly concedes that Defendants returned his funds "a year and 4 months later," "after being served with this action," (Dkt. No. 42, ¶¶ 32, 33, 52), at this stage of

Plaintiff has never used any of the services offered by the VSA. (*Id*.). Plaintiff alleges that

Defendants "targeted minority races, specifically African Americans" for discrimination and

fraud. (*Id*. ¶ 20). Plaintiff alleges that Defendant Christina Strain, acting for Platinum Plus,

"single[d] out and profile[d]" him "through phone solicitation" because he was African

American and in an attempt to misrepresent and sell him "an offer of insurance warranty

protection" and obtain a down payment of $395 "through racial discrimination." (*Id*. ¶¶ 8-9).

Plaintiff seeks $5,000,000 in compensatory and punitive damages. (*Id.* ¶ 37).

## III.     MOTION TO DISMISS

### A.     Standard of Review

To survive a motion to dismiss, "a complaint must provide 'enough facts to state a claim

to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d

129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"Although a complaint need not contain detailed factual allegations, it may not rest on mere

labels, conclusions, or a formulaic recitation of the elements of the cause of action, and the

factual allegations 'must be enough to raise a right to relief above the speculative level.'"

*Lawtone-Bowles v. City of New York*, No. 16-cv-4240, 2017 WL 4250513, at *2, 2017 U.S. Dist.

LEXIS 155140, at *5 (S.D.N.Y. Sept. 22, 2017) (quoting *Twombly*, 550 U.S. at 555). The Court

must accept as true all factual allegations in the amended complaint and draw all reasonable

inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014)

(citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the

tenet that a court must accept as true all of the allegations contained in a complaint is

inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While *pro se*

---

the proceedings the Court will only rely on, and draw reasonable inferences from, the well-pleaded factual allegations
in the complaint, its exhibits, and documents integral to the complaint.

complaints must contain sufficient factual allegations to meet the plausibility standard, [courts] read them with 'special solicitude' and interpret them 'to raise the strongest arguments that they *suggest*.'" *Roman v. Donelli*, 347 F. App'x 662, 663 (2d Cir. 2009) (summary order) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006)).

### B.     Failure to Follow Local Rules

Defendant Platinum Plus argues that the Court should strike the last fifteen pages of Plaintiff's response brief because Plaintiff has violated the Local Rules of the Northern District of New York by "improperly combin[ing] two separate opposition briefs," and "exceed[ing] the permissible page limit by 15 pages." (Dkt. No. 47, at 5 (citing N.D.N.Y. Local Rule 7.1(c))). Plaintiff does not respond to this argument.

"It is well established that a court is ordinarily obligated to afford a special solicitude to *pro se* litigants," because "a *pro se* litigant generally lacks both legal training and experience, and, accordingly, is likely to forfeit important rights through inadvertence if he is not afforded some degree of protection." *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010). However, "the appropriate degree of special solicitude is not identical" for all *pro se* litigants: "the degree of solicitude may be lessened where the particular *pro se* litigant is experienced in litigation and familiar with the procedural setting presented." *Id.*

Although Plaintiff was correct to join his cross-motion for default judgment with his opposition brief, the 41-page brief violated the Local Rules. *See* N.D.N.Y. Local Rule 7.1(c) ("If a party makes a cross-motion, it must join its cross-motion brief with its opposition brief, and this combined brief may not exceed twenty-five (25) pages in length, exclusive of exhibits."). The Court recognizes that the Plaintiff is an experienced litigant, and cautions Plaintiff that he must comply with the local rules and that future lapses may not be overlooked. However, out of solicitude to his *pro se* status the Court will, on this occasion, consider Plaintiff's brief in its

entirety. *See Sidney v. Caron*, No. 09-cv-1326, 2012 WL 4380392, at *2 n.2, 2012 U.S. Dist.

LEXIS 137178, at *6 n.2 (N.D.N.Y. Sept. 25, 2012) (accepting memorandum of law for filing

despite violating page length restriction of Local Rules "[o]ut of special solicitude to Plaintiff as

a pro se civil rights litigant").

### C.      Exhibits Submitted by the Parties

Plaintiff and Defendants Palmer and PayLink Direct attached exhibits beyond the VSA

and the Payment Plan Agreement in support of their motions. (*See* Dkt Nos. 19-1, 19-2, 42).

Defendant Platinum Plus and Plaintiff both attached several exhibits with their replies. (Dkt.

Nos. 47, 48). However, the Court declines to consider the additional exhibits which were "'not

attached to the complaint, w[ere] not incorporated by reference in the complaint,' and therefore

'w[ere] not integral to the complaint.'" *Jones v. Halstead Mgmt. Co.*, LLC, 81 F. Supp. 3d 324,

332 (S.D.N.Y. 2015) (quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir.

2010)).[6]

### D.      Discussion

#### 1.      Section 1981 Claim

42 U.S.C. § 1981 provides that "[a]ll persons within the jurisdiction of the United States

shall have the same right in every State and Territory to make and enforce contracts, to sue, be

parties, give evidence, and to the full and equal benefit of all laws and proceedings for the

security of persons and property as is enjoyed by white citizens, and shall be subject to like

---

[6] Plaintiff's additional exhibits include: what appears to be a portion of the correspondence concerning Plaintiff's complaint with the Better Business Bureau, (Dkt. No. 42, at 42-43); correspondence concerning other customers' complaints with the Better Business Bureau, (*id.* at 52-58); and Plaintiff's e-mail communications with counsel for Atlantic and counsel for Palmer and PayLink Direct, (Dkt. No. 48, at 3-10). Platinum Plus's exhibits include what appears to be correspondence concerning Plaintiff's complaint with the Better Business Bureau, (Dkt. No. 47-4), Platinum Plus has also submitted decisions and records reflecting the Plaintiff's litigation history, which the Court may consider, but has only found material to the issue of whether to enforce its page-length rule as to the pro se response brief.

punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

Section 1981 defines the term "make and enforce contracts" to include "the making,

performance, modification, and termination of contracts, and the enjoyment of all benefits,

privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

To establish a claim under § 1981, "a plaintiff must allege facts in support of the

following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to

discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or

more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be

sued, give evidence, etc.)." *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087

(2d Cir. 1993). The complaint must contain more than conclusory assertions. "In order to survive

a motion to dismiss, the plaintiff must specifically allege the events claimed to constitute

intentional discrimination as well as circumstances giving rise to a plausible inference of racially

discriminatory intent." *Avent v. Progressive Casualty*, No. 19-cv-10907, 2021 WL 168500, at *3,

2021 U.S. Dist. LEXIS 9737, at *9 (S.D.N.Y. Jan. 19, 2021) (quoting *Yusuf v. Vassar College*,

35 F.3d 709, 713 (2d Cir. 1994)). Previously, the Second Circuit required plaintiffs to only show

that a defendant's discriminatory intent "was a 'substantial' or 'motivating factor.'" *Tolbert v.

Queens College*, 242 F.3d 58, 69 (2d Cir. 2001) (citing *Gierlinger v. Gleason*, 160 F.3d 858, 868

(2d Cir. 1998)). However, the Supreme Court recently held that "a plaintiff must initially plead

and ultimately prove that, but for race, it would not have suffered the loss of a legally protected

right." *Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*, 140 S. Ct. 1009, 1019

(2020).

Liberally construed, Plaintiff's § 1981 claim[7] alleges that he was targeted based on his race to be fraudulently induced into entering into the VSA, and then subsequently denied the right to terminate the agreement because he is African American. The Company Defendants argue that Plaintiff has failed to specifically allege facts sufficient to raise a plausible inference that he was subject to race-based discrimination. (Dkt. No. 19-4, at 12; Dkt. No. 21-1, at 10-11; Dkt. No. 31-1, at 6). Plaintiff argues that he has pled "enough facts for the court to allow the action to survive." (Dkt. No. 42, ¶ 50).

The Court agrees that Plaintiff's complaint is insufficient to state a claim under § 1981. Plaintiff has failed to allege specific facts that would support a plausible inference that there was a discriminatory motive and that race was a but-for cause of any Defendants' conduct with respect to these agreements. Plaintiff has not alleged any facts in support of his conclusory assertion that Strain, on behalf of Platinum Plus, "single[d] and out and profile[d] African Americans through solicitation." (Dkt. No. 2, ¶ 8). Nor are there facts from which the Court could plausibly infer that she obtained the down payment "through racial discrimination," as alleged by Plaintiff. (*Id*. ¶ 9). There is nothing in the VSA that supports Plaintiff's assertion that the VSA itself demonstrates the intent of all Defendants to "defraud and forcibly enter African American citizens into a [sic] unlawful contract." (*Id*. ¶ 11). Plaintiff's conclusory assertion that the Defendants target "minority races, specifically African Americans" "to disadvantage them from the rights afforded to every other non African American race" does not provide a factual basis from which the Court could infer that any Defendant discriminated based on Plaintiff's race in connection with the making or termination of the VSA. (*Id*. ¶ 20). These conclusory

---

[7] Although the complaint alleges Plaintiff's § 1981 claim as three separate causes of action, one for each subsection of the statute, the subsections do not provide separate causes of action. *Avent*, No. 19-cv-1494, 2020 WL 758980, at *2, 2020 U.S. Dist. LEXIS 25831, at *6, *report recommendation adopted*, 2020 WL 1689803, 2020 U.S. Dist. LEXIS 60516 (April 6, 2020).

allegations, without more, cannot substantiate a § 1981 claim, even at the pleading stage. *See Mazurek v. Wolcott Bd. of Educ.*, 815 F. Supp. 71, 77 (D. Conn. 1993). Nor has Plaintiff pled facts from which the Court could infer that but for his race, he would not have been induced into entering, or subsequently been denied the opportunity to terminate, the VSA. *See Comcast Corp*, 140 S. Ct. at 1019. Thus, Plaintiff's § 1981 claim must be dismissed against all Defendants.

### 2.    FDCPA Claim

Congress enacted the FDCPA in order to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). In furtherance of this goal, the FDCPA "establishes certain rights for consumers whose debts are placed in the hands of professional debt collectors for collection." *DeSantis v. Computer Credit, Inc.*, 269 F.3d 159, 161 (2d Cir. 2001). "To establish a violation under the FDCPA, (1) the plaintiff must be a 'consumer' who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt, and (2) the defendant collecting the debt is considered a 'debt collector,' and (3) the defendant has engaged in any act or omission in violation of FDCPA requirements." *Okyere v. Palisades Collection, LLC*, 961 F. Supp. 2d 508, 514 (S.D.N.Y. 2013) (citing *Schuh v. Druckman & Sinel L.L.P.*, 751 F. Supp. 2d 542, 548 (S.D.N.Y. 2010)).

The Company Defendants argue that Plaintiff cannot establish the second element, asserting that: (1) Plaintiff never incurred a debt because he was not obligated to make any payments, and (2) Defendants cannot be considered debt collectors. (Dkt. No. 19-4, at 8-10; Dkt. No 21-1, at 6-7; Dkt. No. 31-1, at 3-5). The Company Defendants also argue that Plaintiff has not alleged a violation of any FDCPA provisions, the third element of his claim. (Dkt. No. 19-4, at 11-12; Dkt. No. 21-1, at 7; Dkt. No. 31-1, at 6). Plaintiff does not respond to these arguments.

### a.       Whether Plaintiff Incurred A Debt

The FDCPA defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). The Company Defendants argue that Plaintiff did not incur a debt by virtue of the VSA or the payment plan, because he could cancel the VSA at any time. The VSA expressly provides for the cancellation of the agreement at any point by mailing a cancellation request. (Dkt. No. 19-2, at 16-18). A cancellation of the VSA would also cancel the payment plan. (Dkt. No. 19-3, at 4). At the point Plaintiff received the VSA and wished to reject its term, he was free to cancel within 20 days without any financial penalty. (Dkt. No. 19-2, at 19) ("If no claim has been made under this Agreement, You may return this Agreement within twenty (20) days of the date the Agreement was mailed to you…In such a case, this Agreement will be null and void and We will refund You the full amount of the purchase price of this Agreement.") (emphasis omitted).

"[A]t a minimum, the [FDCPA] contemplates that the debt has arisen as a result of the rendition of a service or purchase of property or other item of value." *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 170 (quoting *Beggs v. Rossi*, 145 F.3d 511, 512 (2d Cir. 1998)). The "amount of debt" under the FDCPA refers to "the total, present quantity of money that the consumer is obligated to pay." *Kolbasyuk v. Capital Mgmt. Servs., LP*, 918 F.3d 236, 240 (2d Cir. 2019). Here, Plaintiff provided a down payment and agreed to pay monthly installments in exchange for a service, in this case, additional coverage for his vehicle. The terms of the payment plan are clear that if the VSA is cancelled, any refunds due to Plaintiff would first be applied towards "outstanding obligations." (Dkt. No. 19-3, at 4). The payment plan therefore envisioned a situation where, by cancelling the VSA, the consumer may no longer have

continuing obligations, but still has "outstanding obligations" under the plan. It also applies a late fee for payments not rendered within five days of its scheduled due date. (Dkt. No. 19-3, at 2). On the face of the payment plan, unless he cancelled the VSA, Plaintiff was obligated to pay $348.67 a month for one year and would be penalized for not rendering timely payments. Although Plaintiff would not have had any obligation under the VSA or payment plan had he cancelled within the first twenty days, there is no allegation in the complaint that Plaintiff did so in accordance with the VSA's terms, which required him to mail a cancellation request and odometer reading. (Dkt. No. 2, at 23).

Construing the complaint liberally, Plaintiff alleges that he owed monies because he made phone calls to Platinum Plus seeking a refund of his $395 down payment "during the dates of May 1, 2019 to date"; Defendants refused to process his refund request; PayLink Direct's Payment Plan Agreement provided that $348.67 monthly payments would be charged to Plaintiff's credit card beginning on May 25, 2019; PayLink Direct "instituted collections asking for their money loaned to him"; and the Defendants repeatedly called him to collect the debt. (Dkt. No. 2, ¶¶ 16, 18, 19; Dkt. 19-3). Crediting Plaintiff's allegations, as the Court must at this stage, Plaintiff has sufficiently alleged a debt.[8]

---

[8] In support of their contention that Plaintiff did not incur a debt, Defendants Palmer, PayLink Direct, and Platinum Plus rely on several cases from outside the Second Circuit which hold that absent "an underlying debt and an obligation to make full and complete payment, a 'credit' situation does not arise" under the Truth in Lending Act ("TILA"). *Munson v. Orrin E. Thompson Homes, Inc.*, 395 F. Supp. 152, 157 (D. Minn. 1974); *see also Gerlach v. Allstate Ins. Co.*, 338 F. Supp. 642, 647 (S.D. Fl. 1972) (finding that insurer was not a creditor within the meaning of the TILA where the insurance policy could be cancelled at any point, leaving "no further obligation on the part of the insured"); *Kuhfeldt v. Liberty Mut. Ins. Co.*, 833 F. Supp. 632, 636 (E.D. Mich. 1993) (holding that no credit relationship exists between plaintiff and insurer under the TILA where plaintiff had no obligation to continue making payments to defendant). However, these cases, which address the definition of different terms ("credit" and "creditor") under a different act (the TILA) in a different factual scenario are inapposite here. Although Plaintiff may not have had an obligation to pay once he cancelled the agreement in accord with its terms, the complaint sufficiently alleges that Plaintiff did have a present and outstanding obligation, and therefore a debt.

### b.      Whether Defendants Are Debt Collectors

Even though Plaintiff adequately alleges that he incurred a debt, he cannot sustain an

FDCPA claim because Defendants are not "debt collectors" within the meaning of the statute. As

defined in the FDCPA, "'debt collector' means any person who uses any instrumentality of

interstate commerce or the mails in any business the principal purpose of which is the collection

of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or

due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The FDCPA specifically

excludes from the term "debt collector" "any person collecting or attempting to collect any debt

owed or due or asserted to be owed or due another to the extent such activity . . . (ii) concerns a

debt which was originated by such person; [or] (iii) concerns a debt which was not in default at

the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F). *See Vincent v. The Money*

*Store*, 736 F.3d 88, 96 (2d Cir. 2013) (noting that the FDCPA establishes rights to consumers

"whose debts are placed in the hands of professional debt collectors for collection").

Drawing all inferences in Plaintiff's favor and assuming that Defendants "all jointly and

individually did conspire" to "engage in abusive, deceptive, and unfair debt collection practices,"

the complaint fails to plausibly allege that any Defendant obtained an interest in the debt when it

was in default. *See Qurashi v. Ocwen Loan Servicing, LLC*, 760 F. App'x 66, 67 (2d Cir. 2019)

(summary order) (finding that plaintiffs "have not plausibly alleged that [defendant] is a debt

collector under the FDCPA" because plaintiff did not allege that defendant had "obtained an

interest in the mortgage while the obligation was in default"); *Dumont v. Litton Loan Servicing,*

*LP*, No. 12-cv-2677, 2014 WL 815244, at *17, 2014 U.S. Dist. LEXIS 26880, at *64 (S.D.N.Y.

Mar. 3, 2014) (holding that mortgage servicers are not covered by the FDCPA "if the debt at

issue was acquired prior to the borrower's default"); *Kesselman v. Rawlings Co., LLC*, 668 F.

Supp. 2d 604, 612 (S.D.N.Y. 2009) (dismissing FDCPA claim because the defendants were

"exempted from the statutory definition of 'debt collector'" where they "obtained the right to reimbursement before any debt was in default").

According to the agreements, Plaintiff purchased the VSA on April 25, 2019, (Dkt. No. 19-2, at 2), and entered into the payment plan with PayLink Direct on the same day, (Dkt. No. 19-3, at 3). The payment plan was not effective until May 25, 2019, (Dkt. No. 19-3, at 1), the day that the waiting period under the VSA was over. Plaintiff alleges that Defendants began making "repetitious phone calls meant to harass, annoy, or abuse" beginning in "April, 2019." (Dkt. No. 2, ¶ 34). The only phone calls specifically described in the complaint are calls made by Defendant PayLink Direct "asking for their money loaned to him." (Dkt. No. 2, ¶ 18). The complaint fails to plausibly allege that any Defendant was a "debt collector" under the FDCPA because, inter alia, there is no allegation that any Defendant obtained an interest in the debt after it was in default.[9] Thus, Defendants' motion to dismiss Plaintiff's FDCPA claim is granted.

### 3.    State Law Claims

Defendants Palmer, PayLink Direct, and Platinum Plus argue that this Court does not have diversity jurisdiction over Plaintiff's state claims under 28 U.S.C. § 1332(a)(1) because Plaintiff's damages cannot meet the $75,000 amount-in-controversy requirement. (Dkt. No. 19-4, at 19-20; Dkt. No. 21-1, at 16).[10] They ask the Court to decline to exercise supplemental jurisdiction over Plaintiff's state law claims if the § 1981 and FDCPA claims are dismissed. (Dkt. No. 19-4, at 20-21; Dkt. No. 21-1, at 16). The Company Defendants also argue that both of Plaintiff's state law claims fail on the merits. (Dkt. No. 19-4, at 17-19; Dkt. No. 21-1, at 13-16; Dkt. No. 31-1, at 11-13).

---

[9] Because Plaintiff has failed to allege that Defendants are debt collectors, the Court has not considered their argument that the complaint fails to allege a claim because it fails to cite to any specific provision of the FDCPA.

[10] Plaintiff has alleged complete diversity of citizenship, (Dkt. No. 2, ¶¶ 3, 5).

### a.   Diversity Jurisdiction

The "party invoking the jurisdiction of the federal court has the burden of proving that it appears to a reasonable probability that the claim is in excess of the statutory jurisdictional amount." *Scherer v. The Equitable Life Assurance Soc'y of the United States*, 347 F.3d 394, 397 (2d Cir. 2003). "Courts recognize a rebuttable presumption that the face of the complaint is a good-faith representation of the 'actual amount in controversy,' and 'to overcome the face-of-the-complaint presumption, the party opposing jurisdiction must show to a legal certainty that the amount recoverable does not meet the jurisdictional threshold.'" *Pollock v. Trustmark Ins. Co.*, 367 F. Supp. 2d 293, 296 (2d Cir. 2005) (quoting *Scherer*, 347 F.3d at 397).

Plaintiff alleges that he accrued damages from "being deprived of his actual money of $395.00" (his down payment) and incurred a debt of $4,579.00 (the total cost of the VSA). (Dkt. No. 2, ¶ 37). Plaintiff also alleges that he "received negative credit reports and reviews that denied plaintiff opportunities to obtain loan on a home [sic], severe pain and suffering and anxiety and mental anguish . . that amounted to 1,000,000 dollars from each defendant" as well as "punitive damages of 4,000,000 million dollars." (*Id.*).

### i.   Breach of Contract Claim

On a breach of contract claim, a plaintiff can recover "general (or direct) damages, which compensate for the value of the promised performance, and consequential damages, which are indirect and compensate for additional losses incurred as a result of the breach." *Kruglov v. Copart of Conn., Inc.*, 771 F. App'x 117, 119 (2d Cir. 2019) (summary order) (citing *Latham Land I, LLC v. TGI Friday's, Inc.*, 948 N.Y.S.2d 147, 151 (3d Dep't 2012)).[11]

---

[11] The parties proceed under the assumption that New York law applies. (Dkt. No. 19-4, at 12; Dkt. No. 21-1, at 13; Dkt. No. 31-1, at 11; Dkt. No. 42, ¶ 18). "Where the parties so assume, the Court need not address choice of law *sua sponte.*" *Henneberry v. Sumitomo Corp. of Am.*, No. 04-cv-2128, 2005 WL 991772, at *5 n.3, 2005 U.S. Dist. LEXIS 7475, at *14 n.3 (S.D.N.Y. Apr. 27, 2005).

Plaintiff cannot recover for emotional distress on a breach of contract theory. *Kruglov*, 771 F. App'x at 119 (citing *Wehringer v. Standard Sec. Life Ins. of N.Y.*, 440 N.E.2d 1331, 454 (N.Y. 1982) ("[A]bsent a duty upon which liability can be based, there is no right of recovery for mental distress resulting from the breach of a contract-related duty.")). "Special, or consequential damages" "are 'extraordinary in that they do not so directly flow from the breach [and] are recoverable only upon a showing that they were foreseeable and within the contemplation of the parties at the time the contract was made.'" *Latham Land I*, 948 N.Y.S.2d at 152 (quoting *American List Corp. v U.S. News & World Report*, 549 N.E.2d 1161, 550 (N.Y. 1989)). Plaintiff does not allege, nor could the Court plausibly infer that the parties contemplated that any breach of contract here would affect Plaintiff's ability to secure a home loan, such that Defendants would be liable for any damages flowing from Plaintiff's inability to do so. Therefore, at most Plaintiff's recovery for breach of contract would appear to be limited to his claim for direct damages: $4,579.00.

### ii.    Fraudulent Inducement Claim

With respect to fraudulent inducement, and fraud claims generally, a plaintiff can only recover "'the actual pecuniary loss sustained as the direct result of the wrong' or what is known as the 'out-of-pocket' rule." *Lama Holding Co. v. Smith Barney Inc.*, 668 N.E.2d 1370, 1373 (N.Y. 1993) (quoting *Reno v. Bull*, 124 N.E. 144, 146 (N.Y. 1919)). "Under this rule, the loss is computed by ascertaining the 'difference between the value of the bargain which a plaintiff was induced by fraud to make and the amount or value of the consideration exacted as the price of the bargain.'" *Lama Holding Co.*, 668 N.E.2d at 1373 (quoting *Sager v. Friedman*, 1 N.E.2d 971, 974 (N.Y. 1936)). Even assuming that the "value of the bargain" was worthless, at most the total amount of consideration that Plaintiff put towards the VSA was $395.00 (his down payment) toward a debt of $4,579.00 (the total cost of the VSA).

### iii.    Punitive Damages

"[A] district court, in determining whether claimed punitive damages count towards the jurisdictional threshold, must examine claims for punitive damages with closer scrutiny than claims for actual damages." *Carling v. Peters*, No. 10-cv-4573, 2013 WL 865842, at *6, 2013 U.S. Dist. LEXIS 32808, at *18 (S.D.N.Y. March 8, 2013) (citing *Nwanze v. Time, Inc*., 125 F. App'x 346, 349 (2d Cir. 2005)). "[I]f punitive damages are permitted under the controlling law, the demand for such damages may be included in determining whether the jurisdictional amount is satisfied." *A.F.A. Tours, Inc. v. Whitchurch*, 937 F.2d 82, 87 (2d Cir. 1991).

Under New York law, "[p]unitive damages are not recoverable for an ordinary breach of contract as their purpose is not to remedy private wrongs but to vindicate public rights." *Rocanova v. Equitable Life Assurance Soc'y of the U.S.*, 634 N.E.2d 940, 943 (N.Y. 1994). "[I]n order to recover punitive damages for breach of contract, a plaintiff must establish that the defendant's conduct: (1) is actionable as an independent tort; (2) was sufficiently egregious; and (3) was directed not only against the plaintiff, but was part of a pattern of behavior aimed at the public generally." *Leviton Mfg. Co. v. Reeve*, 942 F. Supp. 2d 244, 270 (E.D.N.Y. 2013) (citing *Rocanova*, 634 N.E.2d at 944). This requirement applies "whenever an action 'has its genesis in the contractual relationship between the parties.'" *Schonfeld v. Hilliard*, 218 F.3d 164, 184 (2d Cir. 2000) (quoting *New York Univ. v. Continental Ins. Co.*, 662 N.E.2d 763, 767 (N.Y. 1995)); *see also Carling*, 2013 WL 865842, at *7, 2013 U.S. Dist. LEXIS 32808, at *21 ("Because the fraud in which [the plaintiff] has alleged [the defendant] engaged arose out of a contractual relationship, the same requirement applies for punitive damages to be available: The fraudulent conduct must have been directed at the public generally."). For a fraud claim that is not based on a contractual relationship, "[p]unitive damages are permitted when the defendant's wrongdoing is not simply intentional but 'evince[s] a high degree of moral turpitude and demonstrate[s] such

wanton dishonesty as to imply a criminal indifference to civil obligations.'" *Ross v. Louise Wise Servs., Inc.*, 868 N.E.2d 189, 196 (N.Y. 2007) (quoting *Walker v. Sheldon*, 179 N.E.2d 497, 499 (N.Y. 1961).

Defendants have not addressed whether the punitive damages alleged should count toward the jurisdictional threshold. Plaintiff has alleged that the Defendants "targeted minority races, specifically African Americans," and that the terms of coverage were misrepresented to him in an effort to "defraud and forcibly enter African American citizens into [] unlawful contract[s]." (Dkt. No. 2, at ¶¶ 11, 20). While these allegations are conclusory, and insufficient to state his § 1981 claim, he has alleged egregious conduct and a public harm. *See Plymouth Res., LLC v. Norse Energy Corp. USA*, No. 10-cv-909, 2011 WL 13234819, at *7, 2011 U.S. Dist. LEXIS 165573, at *11 (N.D.N.Y. Mar. 10, 2011) (finding punitive damages could sustain amount-in-controversy because plaintiff had sufficiently alleged "that defendant's conduct was directed at other parties"). Because Defendants have not shown, to a legal certainty, that Plaintiff cannot recover punitive damages, the Court finds that Plaintiff's claims for punitive and compensatory damages combined are sufficient to satisfy the $75,000 jurisdictional threshold. *See Pollock*, 367 F. Supp. at 296 ("to overcome the face-of-the-complaint presumption, the party opposing jurisdiction must show to a legal certainty that the amount recoverable does not meet the jurisdictional threshold" (quoting *Scherer*, 347 F.3d at 397)). The Court will therefore consider Defendants' claims that the state claims are insufficiently pled.

### b.    Breach of Contract

"To state a cause of action for breach of contract, a plaintiff must allege "formation of a contract, performance by one party, failure to perform by another and resulting damage." *New York State Workers' Compensation Bd. v. Consolidated Risk Servs., Inc.*, 125 A.D.3d 1250, 1257 (3d Dep't 2015) (citation omitted). "To create a binding contract, there must be a manifestation

of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." *Matter of Express Indus. & Term. Corp., v. New York State Dep't of Transp.*, 93 N.Y. 584, 589 (1999). Courts look to "the offer and the acceptance to determine whether there was an objective meeting of the minds sufficient to give rise to a binding and enforceable contract." *Id.* To plead a breach of contract claim, the "plaintiff must identify the specific provision of the contract that was breached . . . ." *Wolff v. Rare Medium, Inc.*, 210 F. Supp. 2d 490, 494 (S.D.N.Y. 2002).

The Company Defendants argue that Plaintiff has failed to allege breach of any specific contract provision, and that the complaint fails to allege an oral contract. (Dkt. No. 21-1, at 15; Dkt. No. 31-1, at 9; Dkt. No. 47, at 12).[12] Defendants Palmer and PayLink Direct argue that Plaintiff has not identified the contract on which his breach of contract claim rests. (Dkt. No. 19-4, at 14). Plaintiff does not address these arguments.

Plaintiff's breach of contract claim must be dismissed because he has failed to allege the existence of a contract or the terms he claims Defendants breached. The complaint does not aver that there was an oral contract. Plaintiff alleges that Defendant Strain misrepresented "an *offer* of insurance warranty protection" and he subsequently received the written contracts that "contradicted [her] *offer*." The Court could not plausibly infer that there was an oral contract or that any oral agreement that was breached because the complaint fails to allege the essential terms of any such agreement or any specific provision that was breached. *See Saul v. Cahan*, 61 N.Y.S. 3d 265, 268-69 (2d Dep't 2017) (affirming dismissal of complaint for failure to state a claim when it "did not sufficiently allege a meeting of the minds with respect to the material

---

[12] Defendants Platinum Plus and Palmer also argue that any oral contract would be invalid under New York Insurance Law because service contracts must be in writing. (Dkt. No. 47, at 12; Dkt. No. 44, at 5) (citing N.Y. Ins. Law § 7905(a)).

terms" of an alleged oral contract); *Caniglia v. Chicago Tribune-New York News Syndicate, Inc.*, 204 A.D.2d 233, 234 (1st Dep't 1994) (affirming the dismissal of a claim "purporting to set forth a cause of action for breach of contract, as too indefinite, and therefore, unenforceable, for plaintiffs' failure to allege, in nonconclusory language, as required, the essential terms of the parties' purported personal services contract, including those specific provisions of the contract upon which liability is predicated"). "[A] contract must be definite in its material terms in order to be enforceable." *In re Estate of Wyman*, 128 A.D.3d 1157, 1158 (3rd Dep't 2015) (finding that there was no enforceable agreement when the parties had not agreed on a material term).

While Plaintiff has attached the written VSA contract and the PayLink Payment Plan, he alleges that he did not agree to the terms of those agreements. He refers to these documents as the "un-accepted contract"; and states that he "did not ever agree to" the loan. (Dkt. No. 2, ¶¶ 11, 12). In his briefing, Plaintiff argues that the VSA was not, in fact, a binding contract because he did not enter into it willingly and never accepted it.[13] (Dkt. No. 42, ¶¶ 18, 39, 46).

To the extent Plaintiff had entered into these agreements, he has not identified any provision in the agreements that any Defendant breached. While Plaintiff claims Defendants breached these contracts by failing to cancel the policy, refund his down payment, and cancel the "debt," he does not allege that he complied with the cancellation and refund procedure outlined in the VSA, which required submission of the cancellation in writing, along with the VSA "number, VIN, mileage—including a certified odometer reading and the make and model of the

---

[13] Section 7903(b)(1) of New York Insurance Law, which governs service contracts, appears to allow service contracts to be sold first, so long as the seller provides a "copy of the service contract . . . to the service contract holder within a reasonable period of time after the date of purchase of the service contract." *See, e.g.*, *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 295 (2d Cir. 2019) ("SquareTrade notes that New York Insurance Law, which creates the legal framework within which service contracts may be sold in the state, permits sellers to provide customers with the contract governing their transactions within a reasonable amount of time after the purchase. The law requires that consumers be provided at least twenty days after the service contract has been mailed to return the contract to the seller for a full refund." (citing N.Y. Ins. Law § 7903(b)(1), (e)).

Vehicle." (Dkt. No. 19-2, at 16; *see* Dkt. No. 2, ¶ 16 ("Plaintiff then called Platinum Plus Auto

Protection several times after receiving this contract . . . attempting to get his refund.")). Nor has

he alleged that he complied with the procedure for cancelling a VSA in New York. [14] Thus,

neither the VSA nor the PayLink Payment Plan Agreement provide a basis for a plausible

breach-of-contract claim. *See Mecca v. Lennon*, No. 16-cv-1414, 2017 WL 1410790, at *4, 2017

U.S. Dist. LEXIS 59550, at *9 (E.D.N.Y. Apr. 18, 2017) ("Plaintiff does not allege any facts

constituting a breach of contract claim. Notably, she fails to identify the 'contract,' any of its

terms, and precisely what terms were breached. These omissions are fatal to her breach of

contract claim."); *Wolff v. Rare Medium, Inc.*, 210 F. Supp. 2d 490, 494 (S.D.N.Y. 2002)

(explaining that when pleading breach of contract, "a plaintiff must identify the specific

provision of the contract that was breached"). Accordingly, Plaintiff's breach of contract claim

fails.

### c.     Fraud

To state a claim for fraudulent inducement under New York law, a plaintiff must allege:

"(i) a material misrepresentation of a presently existing or past fact; (ii) an intent to deceive; (iii)

reasonable reliance on the misrepresentation by appellants; and (iv) resulting damages." *Johnson

v. Nextel Communs., Inc.* 660 F.3d 131, 143 (2d Cir. 2011) (citing *Ross v. Louise Wise Servs.,*

---

[14] The "Special State Requirements/Disclosures" for New York, which are attached the VSA, state "If no claim has been made under this Agreement, You may return this Agreement within twenty (20) days of the date the Agreement was mailed to You. . . . In such a case, this Agreement will be null and void and We will refund You the full amount of the purchase price of this Agreement." (Dkt. No. 2, at 24). This appears to reflect New York Insurance Law § 7905(n), which provides:

> Service contracts shall contain a statement of the service contract holder's right to return the contract within at least twenty days of the date of mailing of the service contract or within at least ten days if the service contract is delivered at the time of the sale or within a longer time period permitted under the contract. If no claim has been made under the contract, the contract shall be void and the provider shall refund to the contract holder the full purchase price of the contract.

N.Y. Ins. Law § 7905(n).

*Inc.*, 868 N.E.2d 189, 195 (N.Y. 2007)). To the extent that Plaintiff's claim alleges fraud more generally, Plaintiff must allege "a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages." *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 910 N.E.2d 976, 979 (N.Y. 2009). Under either theory, the plaintiff must also allege "specific facts as to the fraud, including the misleading statements, speaker, time, place, individuals involved, and specific conduct at issue." *Johnson*, 660 F.3d at 143 (citing Fed. R. Civ. P. 9(b)). "[I]n order to comply with Rule 9(b), 'the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993).

Liberally construed, Plaintiff alleges that Strain made misrepresentations regarding Platinum's insurance warranty protection that induced Plaintiff to make a $395 down payment towards a $4,579 service contract/loan agreement. Specifically, Plaintiff alleges that in a telephone call on April 10, 2019, Strain misrepresented that the protection plan would include "an unconditional insurance guarantee over the vehicle's engine and all related mechanics of the vehicle," "immediate tow and roadside assistance," "hotel service without dispute," and "immediate" "insurance protection." (Dkt. No. 2, ¶¶ 8, 10, 12, 13, 15). Plaintiff alleges that when he received the written agreement he discovered that, in fact, it was "extremely limited in any coverage at all," it did not cover the entirety of the vehicle's engine and related mechanics, it did not start for thirty days, he would have to "pay for everything himself . . . and apply for a refund later," there was a $100 deductible, and the agreement said that coverage was "not subject to any verbal representation made by the seller of this contract." (*Id*. ¶¶ 11, 13, 14). Plaintiff has

attached to the complaint a letter from Strain enclosing the VSA and Payment Plan Agreement. (Dkt. No. 2, at 15).

Without identifying any conduct of any of the Company Defendants, Plaintiff alleges that the Defendants "use[d] fraud to obtain security payments and enter into an unfair loan and unaccepted contract." (*id*. at ¶ 11). The Company Defendants argue that Plaintiff's reliance on Strain's alleged misrepresentations was not justifiable because the VSA stated that it was not subject to any verbal representations made by the seller. (Dkt. No. 19-4, at 18; Dkt. No. 21-1, at 14; Dkt. No. 31-1, at 11); *Junk v. Aon Corp.*, No. 07-cv-4640, 2007 WL 4292034, at *3, 2007 U.S. Dist. LEXIS 89741, at *9 (S.D.N.Y. Nov. 30, 2007) ("By signing [agreement with a merger clause], Plaintiff explicitly agreed to forfeit any prior oral agreement between himself and Defendants."). Here, however, Plaintiff did not sign an agreement with a merger clause. He alleges that he did not see the VSA until *after* he had already paid a down payment towards the service plan, in reliance on Strain's alleged misrepresentations and that he never signed or otherwise agreed to the VSA. Therefore, at this stage of the litigation, the inclusion of a merger clause in a contract Plaintiff alleges he never agreed to is not a basis for dismissal.

The Company Defendants argue that the fraud claim must fail because Plaintiff was entitled to a refund under the terms of the VSA, (Dkt. No. 19-4, at 18; Dkt. No. 21-1, at 14; Dkt. No. 31-1, at 11), but do not cite any law in support of this proposition. As described above, Plaintiff alleges that he paid a $395 down payment; that Defendants refused to process his refund request and, according to the Payment Plan Agreement, $348.67 monthly payments were to be charged to Plaintiff's credit card beginning on May 25, 2019. (Dkt. No. 2, ¶¶ 16, 18, 19; Dkt. No. 19-3). Plaintiff alleges that PayLink Direct "instituted collections asking for their money loaned to him," and the Defendants repeatedly called him to collect the debt. (Dkt. No. 2, ¶¶ 18, 19).

Crediting these allegations, Defendants have failed to show how the Plaintiff's right to a refund entitles them to dismissal at this stage of the proceedings.

Defendant Platinum summarily states that the alleged misrepresentations "are not set forth in the requisite detail," without any explanation or analysis. (Dkt. No. 21-2, at 13). The Court finds that Plaintiff has adequately pled the requisite specificity under Rule 9(b) regarding Strain's representations.[15] *See HempChain Farms, LLC v. Sack*, No. 19-cv-1364, 2021 WL 326607, at *6-7, 2021 U.S. Dist. LEXIS 18329, at *12-17 (N.D.N.Y. Feb. 16, 2021) (finding that the plaintiff "sufficiently alleged representations of a material fact by outlining what those representations were, who made them, and when they were made").

Defendant Atlantic also argues that Plaintiff has failed to plead his claim with the requisite specificity. (Dkt. No. 31-1, at 11). The Court agrees. Plaintiff has not satisfied the heightened pleading standard of Rule 9(b) with respect to Atlantic.[16] Plaintiff does not allege any fraudulent statements made by Atlantic. Plaintiff broadly alleges that the VSA shows "the clear knowledge of the involved defendants" and the "intent" of the Defendants "to defraud" Plaintiff. (Dkt. No. 2, at ¶ 11). However, absent allegations specifying fraudulent statements by Atlantic stating where and when the statements were made, and an explanation of how any such statement were fraudulent, Plaintiff has not met his burden of pleading fraud with specificity under Rule 9(b) with respect to Atlantic. *See Mills*, 12 F.3d at 1175. Plaintiff has also not alleged facts to support imputing liability for Strain onto Atlantic, such as control over Strain's actions. *See Kavanaugh v. Nussbaum*, 523 N.E.2d 284, 287-88 (N.Y. 1988) ("Underlying the doctrine of

---

[15] Platinum Plus has not argued that it is not vicariously liable for Strain's conduct. *See N.X. v. Cabrini Med. Ctr.*, 765 N.E.2d 844, 846 (N.Y. 2002) ("Under the doctrine of respondeat superior, an employer may be vicariously liable for the tortious acts of its employees only if those acts were committed in furtherance of the employer's business and within the scope of employment.").

[16] Defendants Palmer and PayLink Direct have not challenged the fraud claim as lacking sufficiency with respect to them. (*See* Dkt. No. 19-4).

vicarious liability—the imputation of liability to defendant for another person's fault, based on

defendant's relationship with the wrongdoer—is the notion of control."). Plaintiff's fraud claim

against Atlantic is therefore dismissed.

## IV.   MOTION FOR DEFAULT JUDGMENT

Plaintiff has cross-moved for default judgment against Defendant Strain, Platinum Plus,

and Atlantic due to their failure to "answer the complaint" or "submit a motion to dismiss." (Dkt.

No. 42, ¶ 83). Defendants Platinum Plus and Atlantic argue that they responded by submitting

the present, timely, motions. (Dkt. No. 45, at 2; Dkt. No. 47, at 5).

"Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for

obtaining a default judgment." *Priestly v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011).

First, under Rule 55(a), the plaintiff must obtain a clerk's entry of default. Fed. R. Civ. P. 55(a)

("When a party against whom a judgment for affirmative relief is sought has failed to plead or

otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the

party's default."); *see also* N.D.N.Y. L.R. 55.1 (requiring a party seeking a clerk's entry of

default to "submit an affidavit showing that (1) the party against whom it seeks a judgment . . . is

not an infant, in the military, or an incompetent person (2) a party against whom it seeks a

judgment for affirmative relief has failed to plead or otherwise defend the action . . . and (3) it

has properly served the pleading to which the opposing party has not responded"). Second, under

Rule 55(b), the plaintiff may apply for entry of default judgment by the clerk "[i]f the plaintiff's

claim is for a sum certain," or by the court "[i]n all other cases." Fed. R. Civ. P. 55(b)(1), (2); *see*

*also* N.D.N.Y. L.R. 55.2.(b).

At the first step, Plaintiff has failed to, and cannot, obtain a clerk's entry of default

because all served parties in this action have responded. Contrary to Plaintiff's assertions, both

Defendants Platinum Plus and Atlantic responded to Plaintiff's complaint by filing timely

motions to dismiss. Atlantic filed its motion on August 4, 2020, (Dkt. No. 31), the day it was due as reflected by a non-numbered docket entry entered on the same day. (*See also* Dkt. No. 29 (Atlantic's acknowledgement of receipt of summons and complaint)). Defendant Platinum Plus's deadline to respond to the complaint was July 21, 2020, (Dkt. No. 20), and its motion to dismiss was filed that day, (Dkt. No. 21). Although Defendant Strain has never appeared in this action, there is nothing in the record to show that she was ever served. (*See, e.g.*, Dkt. No. 24).[17] Therefore, Plaintiff's motion for the default judgment is denied.

## V.      LEAVE TO AMEND

The court should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also* Fed. R. Civ. P. 15 (a)(2). ("The court should freely give leave when justice so requires."). Although it does not appear as though Plaintiff has a viable breach of contract claim, in recognition of Plaintiff's status as a pro se litigant and because it may be possible for Plaintiff to assert cognizable claims under § 1981, for breach of contract and fraud with better pleading, Plaintiff is granted to leave to amend with respect to those claims. However, there is no indication that better pleading could cure the substantive problem with Plaintiff's FDCPA claim. Because it appears that any amendments by Plaintiff would be futile for his FDCPA claim, the Court denies leave to amend on this claim.

Plaintiff is granted leave to file an amended complaint with respect to his § 1981 claim, breach of contract claim, and fraud claim within thirty (30) days of the date of this Order. Any such amended complaint will replace the existing complaint and must be a wholly integrated and

---

[17] The case against Defendant Christina Strain is subject to dismissal under Fed. R. Civ. P. 4(m) for failure to timely serve the defendant.

complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (quotation marks omitted)).

## VI.   CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendants Palmer Administrative Services, Inc., PayLink Direct, Platinum Plus Auto Protection, and Atlantic Specialty Insurance Company's motions to dismiss (Dkt. Nos. 19, 21, 31) are **GRANTED** as to Plaintiff's § 1981 claim, FDCPA claim, and breach of contract claim against all Defendants, as well as Plaintiff's fraud claim against Defendant Atlantic, and are **DENIED** in all other respects; and it is further

**ORDERED** that Plaintiff's motion for default judgment (Dkt. No. 42) is **DENIED**; and it is further

**ORDERED** that Plaintiff is **GRANTED** leave to file an amended complaint with respect to his § 1981 claim, breach of contract claim, and fraud claim within thirty (30) days of the date of this Order; and it is further

**ORDERED** that if Plaintiff does not file an amended complaint within thirty days, the Clerk is directed to dismiss Defendant Atlantic Specialty Insurance Company without further order; and it is further

**ORDERED** that the Clerk of the Court is directed to serve this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: February 23, 2021
         Syracuse, New York

Brenda K. Sannes
U.S. District Judge